UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
KATHERINE MARTINEZ,

                        Plaintiff,

                 -against-

ROBERT M. O'LEARY, Assistant Commissioner,
Trials &Litigation Division for the New York City
Department of Correction, JOHN ANTONELLI,
Deputy Commissioner for the New York City
Department of Correction, ALAN VENGERSKY,
Deputy Commissioner, Department of Personnel for
the Department of Correction, LARRY DAVIS, Chief
of the Department for the New York City Department
of Correction, THE NEW YORK CITY
DEPARTMENT OF CORRECTION, and DORA
SCHRIRO, Commissioner For the New York City
Department of Correction,

                        Defendant.   x
----------------------------------------------------------------

**MEMORANDUM AND ORDER**

1:11-CV-1405 (ENV)(JO)

VITALIANO, D.J.

Plaintiff Katherine Martinez brings claims pursuant to 42 U.S.C. § 1983 and state law alleging that defendants the New York City Department of Correction ("DOC")[1] and five of its employees—Assistant Commissioner Robert O'Leary, Deputy Commissioner John Antonelli, Deputy Commissioner Alan Vengersky, Chief of Department Larry Davis, and Commissioner Dora Schriro—violated her rights by causing her to enter into a "constitutionally defective" contract and terminating her employment without a hearing. Defendants now move for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons set forth below, the motion is granted.

---

[1] For the reasons discussed *infra*, the Clerk of Court is directed to amend the caption to substitute the City of New York (the "City") for the New York City Department of Correction as defendant.

1

Background

Martinez joined DOC as a correction officer in 2001. (P. Rule 56.1 Stmt. ¶ 1.) The parties do not dispute that she achieved tenured status, nor do they disagree that Martinez was often battling with those in supervision, accumulating several Command Disciplines as well as other Charges and Specifications, during her nine years of employment.[2] (P. Rule 56.1 Stmt. ¶¶ 7-9, 13, 16, 22, 27-28, 35.) Martinez was not without remedy. Hearings were held to adjudicate the allegations giving rise to the Command Disciplines, but plaintiff entered into two "Negotiated Plea Agreements" ("NPAs") to settle the more formal Charges and Specifications without a final adjudication. (P. Rule 56.1 Stmt. ¶¶ 11, 14, 17, 23, 29, 36.)

At issue in this action is the fallout from an NPA that Martinez signed, with the advice of counsel, on January 21, 2009 ("2009 NPA"). (Seacord Dec., Ex. O.) In accordance with its terms, Martinez agreed to the "forfeiture of sixty (60) vacation days plus two (2) years limited probation, limited to false statements, reports and testimony and limited to sick leave rules, regulations, and directives." (Seacord Dec., Ex. O.) In addition, she signed a statement indicating her understanding that she "[had] waived [her] rights as a tenured employee for this probationary period and [subjected herself] to termination as any other probationary employee." (Seacord Dec., Ex. O.)

Martinez continued to work for DOC until August 25, 2010, when she was terminated without notice or hearing.[3] (P. Rule 56.1 Stmt. ¶ 46.) Defendants justify the

---

[2] Defendants describe Command Discipline as an "informal, nonadversarial form of punishment that is used to adjudicate minor violations of DOC Rules and Regulations." (D. Rule 56.1 Stmt. ¶ 10. Charges and Specifications constitute more formalized charges, for which tenured DOC employees were entitled to a hearing pursuant to state law. See N.Y. Civ. Serv. Law § 75 (McKinney).

[3] The record reflects that DOC resolved the only disciplinary charge directed at Martinez in the intervening 20 months. On March 12, 2009, plaintiff received a Command Discipline for four

2

decision to proceed without a hearing by citing two alleged transgressions that they claim fall within the four corners of the limited probation created by the 2009 NPA. (D. Rule 56.1 Stmt. ¶ 44.) First, they rely on a purported false report, in which Martinez represented that she had not taken a meal break during her tour on December 15, 2009 when she allegedly did take such a break. (D. Rule 56.1 Stmt. ¶ 37-41.) Second, defendants claim that Martinez violated the sick leave rules and regulations by missing a scheduled appointment at DOC's Health Management Division ("HMD") and failing to inform anyone that she would not be able to attend. (D. Rule 56.1 Stmt. ¶ 42-43.)

Plaintiff challenges her termination on due process grounds, contending that, notwithstanding the 2009 NPA, she had a constitutionally protected property interest in her job that entitled her to a hearing in advance of being fired. In addition, she claims that the 2009 NPA was "constitutionally defective," because it contained conflicting material terms, or, alternatively, that, by merely permitting her to enter into the 2009 NPA, as distinguished from being terminated in accordance with its terms, a constitutionally-protected interest was violated. On top of her federal claims, Martinez advances state law claims, namely breach of contract and three causes of action for intentional, negligent, and reckless infliction of emotional distress.

## Standard of Review

A motion for summary judgment is granted only if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

---

alleged offenses, including submitting a false report. (P. Rule 56.1 Stmt. ¶ 35; D. Rule 56.1 Stmt., Ex. P.) Upon investigation, DOC determined that it could substantiate only two allegations: leaving an assigned post and failing to comply with a directive concerning the Emergency Health Care log. (D. Rule 56.1 Stmt., Ex. P.) As a penalty, Martinez was required to forfeit two vacation days. (P. Rule 56.1 Stmt. ¶ 35.)

3

56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A court's responsibility in assessing the merits of a summary judgment motion is thus not to try issues of fact, but rather to "determine whether there are issues of fact to be tried." *Sutera v. Schering Corp.*, 73 F.3d 13, 16 (2d Cir. 1995). Accordingly, the moving party bears the burden of demonstrating that there is no genuine issue as to any material fact, *see, e.g., Jeffreys v. City of N.Y.*, 426 F.3d 549, 554 (2d Cir. 2005), and the motion court must resolve all ambiguities in the evidence and draw all permissible factual inferences in favor of the party opposing the motion, *see, e.g., Sec. Ins. Co. of Hartford v. Old Dominion Freight Line. Inc.*, 391 F.3d 77, 83 (2d Cir. 2004); *Hetchkop v. Woodlawn at Grassmere, Inc.*, 116 F.3d 28, 33 (2d Cir. 1997) ("If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper.").

## Discussion

### 1. Department of Correction

Martinez's claims against DOC must be dismissed as a matter of law, because a City agency cannot be sued. N.Y. City Charter ch. 17, § 396; *see Brewton v. City of New York*, 550 F.Supp.2d 355, 368 (E.D.N.Y.2008); *Echevarria v. Dep't of Corr. Servs.*, 48 F.Supp.2d 388, 391 (S.D.N.Y.1999). Furthermore, there being a clear identity of interest between the two, pursuant to Rule 21, the City is substituted *sua sponte* for DOC, and the Clerk of Court is directed to amend the caption accordingly.

### 2. Individual Defendants

Martinez does not specify in her Complaint whether she has sued O'Leary, Antonelli, Vengersky, David, Schriro in their individual or official capacities. Defendants consistently have interpreted the complaint to name the individually-named defendants only in

their official capacity, *see, e.g., Martinez v. O'Leary*, 1:11-CV-1405 (Docket No. 2), without documented objection from Martinez. They now urge the Court to adopt their interpretation, citing primarily Martinez's failure to affect service upon the individually-named defendants in their individual capacity.

When a suit is brought "against a governmental officer as an individual, rather than as an official, then service of the papers on the chief executive officer of the governmental entity will be insufficient to confer jurisdiction over the individual, who must be served as would any other individual defendant." C. Wright & A. Miller, *Federal Practice and Procedure* § 1109 at 45-46; *see also Norwood v. Salvatore*, 2013 WL 1499599 (N.D.N.Y. 2013); *Polite v. Town of Clarkstown*, 60 F. Supp. 2d 214 (S.D.N.Y. 1999). Martinez has not filed proof of service upon the individually-named defendants in their individual capacity as is required by Rule 4(l)(1).[4] Nor has she in any way contested defendants' argument, fortified by the absence of individual service, that the individual defendants have been sued solely in their official capacity. Therefore, for all of these reasons, including the absence of individual service of process, the Court interprets Martinez's complaint to state claims against the individually-named defendants only in their official capacity.

That decision has consequences. "[T]he real party in interest in an official-capacity suit is the governmental entity and not the named official." *Hafer v. Melo*, 502 U.S. 21, 25 (1991). As such, "official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." *Hafer v. Melo*, 502 U.S. 21, 25 (1991). "Courts routinely dismiss official capacity claims where the plaintiff also sues the municipality.

---

[4] Plaintiff also failed to file affidavits providing service upon DOC or the individually-named defendants in their official capacity. However, defendants have acknowledged service by appearing in this action.

5

See, e.g., *Nabatkhorian v. County of Nassau*, 2013 WL 1233247 at *5 (E.D.N.Y. 2013); *Thomas v. Venditto*, 2013 WL 653962 at *9 (E.D.N.Y. 2013); *Volpe v. Nassau Cnty.*, 2013 WL 28561 at *13 (E.D.N.Y. 2013). Accordingly, the § 1983 claims against the individually-named defendants in their official capacity are hereby dismissed.

3. Section 1983

To establish a valid claim for deprivation of due process under 42 U.S.C. § 1983, a plaintiff must first demonstrate that defendant deprived her of a constitutionally protected liberty or property interest. *See Finley v. Giacobbe*, 79 F.3d 1285, 1269 (2d Cir. 1996). Martinez proffers sufficient evidence to demonstrate that she was not afforded process in advance of her termination. However, "[t]here is no constitutional violation, and thus no available § 1983 action, when a plaintiff has access to an adequate state post-deprivation procedure to remedy a random, arbitrary deprivation of property or liberty." *David v. City of New York*, No. 06 CV 3323, 2007 WL 2973695 (E.D.N.Y. Sept. 28, 2007) (internal citations omitted).

The Second Circuit has endorsed state court Article 78 review as a sufficient post-deprivation remedy in the context of a deprivation claim based on a change in employment status.[5] *See Byrne v. Ceresia*, 503 F. App'x 68, 69 (2d Cir. 2012). Indeed, numerous similarly

---

[5] While the Second Circuit has found post-deprivation relief to be insufficient "where the deprivation was caused by high-ranking officials who had final authority over the decision-making process," the exception does not apply to Martinez's claim. *New Windsor Volunteer Ambulance Corps, Inc. v. Meyers*, 442 F.3d 101, 116 (2d Cir. 2006). Martinez does not proffer an iota of evidence suggesting that any of the individuals involved in her termination were imbued—statutorily or otherwise—with policy-making authority. Moreover, even if she had, the exception would not be appropriate in this instance. Martinez does not deny that she signed the 2009 NDA. Even a high-ranking official should have had the right to rely on the executed agreement. At the time DOC officials exercised DOC's rights under the 2009 NPA, plaintiff's employee records reflected that she had entered into the contract knowingly with the advice of counsel in the course of settling an earlier disciplinary matter. Bluntly, those records showed

situated aggrieved public employees have availed themselves of the remedy following termination pursuant to a limited probation agreement. *See e.g., Bradford v. New York City Dep't of Correction*, 867 N.Y.S.2d 403 (1st Dep't 2008); *Tankard v. Abate*, 624 N.Y.S.2d 161 (1st Dep't 1995). Accordingly, because Martinez could have challenged her termination through an Article 78 proceeding, fully vindicating her constitutional right to due process, she was not deprived of that right by any act or omission of the City, and her claim to the contrary fails.

4. Breach of Contract

Martinez alleges that defendants breached the 2009 NPA by terminating her without a hearing, even though she did not violate the terms of her limited probation. Defendants argue that the nature of the conduct giving rise to Martinez's claim limits her to relief under Article 78 of the New York Civil Practice Law and Rules. Further, they contend that the four-month statute of limitations for Article 78 proceedings elapsed months before Martinez initiated the instant action, and, that, therefore, her claim must be dismissed as untimely.

As the Court observed *supra*, in New York, there is absolutely no doubt that regardless of how the claim may be styled or identified in the complaint, Article 78 applies to claims, like those of Martinez, asserting a grievance arising out of a public employment

---

that she signed a document clearly stating that she "subject[ed] [herself] to termination as any other probationary employee." Indeed, requiring a pre-deprivation hearing even though the aggrieved employee signed a NPA waiving the right to a hearing would render NPAs a nullity. There is no plausibly pleaded fact, much less evidence of it, that the City intentionally enters into involuntary or defective NPAs as part of a policy to defeat the due process rights of employees. Plaintiff's principal claim of constitutional invalidity in her executing the 2009 NPA was that her lawyer told her that in doing so she would not waive her hearing rights, a totally post-hoc naked assertion. At the time of plaintiff's termination on charges within the bounds of her limited probationary status and in the complete absence of any objective fact suggesting the 2009 NPA was anything but knowing and voluntary, DOC was entitled to rely, for due process purposes, on its terms, which accorded DOC the right to terminate Martinez on the charges alleged without a pre-deprivation hearing.

relationship. Whether the public employee's claim is that a statute or contract right has been breached, an "Article 78 proceeding is the proper vehicle to determine whether the law has been lawfully applied, or [whether] . . . certain government acts [are valid]." *Bldg. Indus. Elec. Contractors Ass'n v. City of New York*, 2011 WL 3427138 (S.D.N.Y. 2011) aff'd, 678 F.3d 184 (2d Cir. 2012). A "contract" claim used as a vehicle for challenging the termination of a civil servant on limited probation pursuant to the "contract" is "fundamentally premised upon the contention that the *administrative determination* terminating [] employment was wrongful." *Pagan v. Board of Educ. of City School Dist. of City of New York*, 56 A.D.3d 330, 330 (1st Dep't 2008) (emphasis added). Consequently, the claim Martinez styles as a breach of contract action "should [have been] brought in a proceeding pursuant to CPLR article 78" within the applicable four-month limitations period. *Todras v. City of New York*, 11 A.D.3d 383, 384 (1st Dep't 2004). Martinez did not initiate the instant action until March 23, 2011, nearly seven months after she was terminated. Her claim is, therefore, untimely, and the Court exercises supplemental jurisdiction solely for the purpose of dismissing it.

5. Infliction of Emotional Distress

Finally, Martinez claims that, by terminating her without a hearing, defendants intentionally, recklessly, and/or negligently inflicted emotional distress.[6] New York law sets very strict pleading standards for these torts. *Ahmed v. Gelfand*, 160 F. Supp. 2d 408, 416 (E.D.N.Y. 2001). Liability lies only where conduct is "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized community." *Bender v. City of New York*, 78 F.3d

---

[6] Martinez's first two claims reduce to a single cause of action, because "reckless conduct is encompassed within the tort denominated intentional infliction of emotional distress." *Dana v. Oak Park Marina, Inc.*, 230 A.D.2d 204, 208-09 (4th Dep't 1997).

8

787, 790–91 (2d Cir.1996). The record does not reflect that defendants engaged in any conduct that comes close to rising to the level necessary to support claims for intentional or negligent infliction of emotional distress. Accordingly, summary judgment is granted in the exercise of the Court's supplemental jurisdiction.

## Conclusion

For the foregoing reasons, the claims against the Department of Correction are dismissed and summary judgment is granted in favor of the City of New York and all of the individual defendants.

The Clerk of Court is directed to enter Judgment accordingly and to close the case.

**So Ordered.**

Dated: Brooklyn, New York
    June 28, 2013

                                             s/ ENV
                                        _____
                                        ERIC N. VITALIANO
                                        United States District Judge